UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

OREN HINDI and MAYSAM ALJADER,

      Plaintiffs,

  -v-                                              No. 14-CV-8984-LTS

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY,

      Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiffs Oren Hindi ("Hindi") and Maysam Aljader ("Aljader") (collectively, "Plaintiffs"), who have served at all relevant times as officers with the Port Authority Police Department, bring this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), the New York State Human Rights Law, codified at N.Y. Exec. Law § 296 ("SHRL"), and the New York City Human Rights Law, codified at N.Y.C. Admin. Code § 8-101 et seq. ("CHRL") against their employer, the Port Authority of New York and New Jersey ("Port Authority" or "Defendant"). Plaintiffs allege that they experienced discrimination and a hostile work environment on the basis of their religion and national origin. The Court has jurisdiction of the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367. Defendant now moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to all claims. The Court has considered thoroughly all of the parties' submissions. For the following reasons, the Court grants Defendant's motion in its entirety.

BACKGROUND

Except as otherwise noted, the following material facts are undisputed.[1] The Port Authority is a bi-state agency "created by Compact between the states of New York and New Jersey and recognized and endorsed by the Congress of the United States." (Def. 56.1 ¶ 4.) Oren Hindi is a Jewish male of Israeli and Yemeni descent. (Docket Entry No. 1, Complaint ("Compl.") ¶ 8.) Maysam Aljader is a male of Iraqi descent. (Compl. ¶ 27.) Hindi and Aljader both began working for the Port Authority as police officers in July 2002. (Id. ¶¶ 9, 28.) Hindi worked at John F. Kennedy International Airport ("JFK Airport") from 2002 to 2003, and again from 2012 until at least 2016. (Def. 56.1 ¶¶ 17, 22-23.) Aljader worked at JFK Airport from 2004 until at least 2016. (Def. 56.1 ¶ 37.) Both Hindi and Aljader worked a significant number of overtime hours while assigned to JFK Airport. (Def. 56.1 ¶¶ 24, 38.)

Sergeant Promotion

On March 3, 2010, the Port Authority announced a sergeant promotion opportunity. (Def. 56.1 ¶ 46.) Police officers applying for the promotion were first required to take and pass a written examination before continuing in the promotion process. (Def. 56.1 ¶ 49.) Officers who received a passing score were placed on a "Horizontal Roster"—a list from which names were randomly selected for further evaluation. (Id.) The Port Authority conducted three separate evaluation rounds, which began in June 2011, February 2012, and November 2012, respectively. (Def. 56.1 ¶¶ 51-52.) For the November 2012 evaluation process, rather

---

[1] The facts presented or recited as undisputed are drawn from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no non-conclusory factual proffer. Citations to Defendant's Local Civil Rule 56.1 Statement (Docket Entry No. 27, Defendant's Statement of Undisputed Facts Pursuant to Rule 56.1 ("Def. 56.1")) incorporate by reference citations to the underlying evidentiary submissions.

than randomly selecting names from the Horizontal Roster, the Port Authority evaluated all officers who had been placed on the Horizontal Roster but had not yet been promoted to sergeant. (Docket Entry No. 28, Michael Ford's Affidavit in Support of Defendant's Motion for Summary Judgment ("Ford Aff."), ¶ 14.) The Port Authority published a separate announcement in connection with each round of evaluation. (Docket Entry No. 29, Declaration of Cheryl Alterman in Support of Defendant's Motion for Summary Judgment ("Alterman Decl."), Exs. L and Q.)

Each promotion announcement set forth eligibility criteria, which included attendance requirements. (Id.) Candidates' attendance records were evaluated at two separate stages during the promotional process: first, as part of the "initial screening" process and again as part of the "selection and appointment process." (Alterman Decl., Ex. Q.) To satisfy the "initial screening" criteria, candidates could not have more than three sick "occasions"[2] or eleven sick days during two of the three years prior to the announcement. (Alterman Decl., Ex. Q.) Injuries on duty, maternity leave, and hospitalizations were excluded from consideration during the initial screening process. Candidates who were not "screened out" for failure to meet the initial evaluation criteria moved on to be reviewed by a Promotional Review Board as part of the "selection and appointment process." (Ford Aff. ¶ 10.) The attendance criteria applied during the "selection and appointment process" were more exacting; candidates with seven or more absence occasions within an approximately six-year time period (regardless of reason for the absence) were rated "unacceptable." (Ford Aff. ¶¶ 11, 14.)

---

[2] A sick "occasion" refers to the "number of days that you are out." (Alterman Decl., Ex. M at 22.) For example, an absence of four consecutive days would constitute one sick "occasion" and four sick days. (See id.)

Hindi and Aljader both took and passed the qualifying examination and were placed on the Horizontal Roster. (Compl. ¶¶ 12, 31.) Hindi was evaluated for promotion during the February 2012 and November 2012 processes, and Aljader was evaluated during the November 2012 process. (Def. 56.1 ¶¶ 59, 61-63.) Plaintiffs were not otherwise randomly selected to be evaluated. (Id.) While both Hindi and Aljader advanced beyond the "initial screening" process, the two were ultimately deemed ineligible for promotion during the "selection and appointment" process: the Promotion Review Board awarded each an "Unacceptable" attendance rating and, thus, Hindi and Aljader were "Not Recommended" for promotion. (Ford Aff. ¶¶ 13-15; see also Alterman Decl., Exs. R and S.) Hindi had seven absence occasions within the time period used for the February 2012 and November 2012 promotional processes.[3] (Ford Aff. ¶¶ 13, 15.) Aljader had seven absence occasions within the time period used for the November 2012 promotional process. (Ford Aff. ¶ 14.) Plaintiffs were informed that they were ineligible for promotion by November 8, 2013.[4] (Alterman Decl., Exs. R and S.)

Detective Promotion

In addition to applying for sergeant, in July 2013, Hindi also applied for promotion to detective. (Def. 56.1 ¶¶ 69-70.) Unlike with his sergeant application, Hindi's attendance record was rated "Acceptable" during the detective evaluation process and, overall,

---

[3] For the February 2012 promotional process, the Promotion Review Board considered attendance records for the period of January 1, 2006, to February 13, 2012. (Ford Aff. ¶ 11.) For the November 2012 promotional process, the Promotion Review Board considered attendance records for the period of January 1, 2007, to November 2, 2012. (Ford Aff. ¶ 14; Alterman Decl., Ex. Q at 8.)

[4] Plaintiffs' evidentiary submissions suggest that both Hindi and Aljader knew about their non-promotions long before receiving the Port Authority's November 8, 2013, letter. (See Docket Entry No. 37, Declaration of Thomas Ricotta, Esq. ("Ricotta Decl."), Ex. G at 1; see also Ricotta Decl., Ex. F at 1.)

he received a "Recommended" rating.  (Def. 56.1 ¶ 73.)  Hindi "maintains his 'Recommended' rating for the Detective position" and remains on the active promotion list.  (Def. 56.1 ¶ 75.)

Hostile Work Environment

        Hindi and Aljader assert that they experienced a hostile work environment during their time at the Port Authority.  In February 2012, someone drew a Jewish star next to Hindi's name on the list of officers who had been randomly selected from the Horizontal Roster for further evaluation in the sergeant promotion process.  (Ricotta Decl., Ex. B; see also, Alterman Decl., Ex. G at 169-70.)  In May 2013, after some coins dropped on the floor, an unidentified co-worker stated, "money always finds its way to Jews."  (Alterman Decl., Ex. G at 172-73.)  In October 2013, after returning from the restroom, Hindi discovered that his identification badge had been defaced with a hat and facial hair typically associated with members of the Middle Eastern or Orthodox Jewish community.  (Ricotta Decl., Ex. C; Alterman Decl., Ex. G at 174-76.)  In April 2014, an unidentified co-worker referred to Jewish people as "Christ killers" in Hindi's presence.  (Alterman Decl., Ex. G at 177-78.)

        Aljader encountered similar experiences.  On an unspecified date, Aljader discovered a picture of his face superimposed onto a picture portraying Osama Bin Laden.  (Ricotta Decl., Ex. D; Alterman Decl., Ex. H at 130-31.)  This picture had been posted in a common break room.  (Id.)  Sometime in 2002, Aljader was referred to as "Alcader," an alleged derogatory reference to the terrorist organization known as "Al-Qaeda."  (Alterman Decl., Ex. H at 141-42.)  On another unspecified date, a co-worker asked Aljader if he had arrived "on [his] magic carpet."  (Alterman Decl., Ex. H at 144.)  On another occasion, someone asked Aljader if he was "sending money back to ISIS."  (Alterman Decl., Ex. H at 151.)  Lastly, in June 2014, Aljader learned that a picture of people wearing "Arab garb" had been posted in the common

break room with his name written next to the picture. (Alterman Decl., Ex. H at 147.) Aljader never saw the picture himself. (Alterman Decl., Ex. H at 148.)

To address issues pertaining to harassment in the workplace, the Port Authority published an "Equal Employment Opportunity Guide." (Alterman Decl., Ex. P.) This Guide provided all Port Authority employees with information about how to file a discrimination or harassment complaint with its Office of Equal Opportunity. (Alterman Decl., Ex. P at 8.) These procedures indicated that "[a]ll EEO complaints [would] be treated as confidentially as possible," and provided a mechanism for filing anonymous complaints. (Id.) Neither Hindi nor Aljader "filed a complaint with the Port Authority's Equal Employment Opportunity Office regarding any of the allegations in the Complaint." (Def. 56.1 ¶¶ 25, 39.)

Procedural History

On April 2, 2014, Plaintiffs filed a charge of discrimination with the New York State Division of Human Rights, which dually filed the charge with the Equal Employment Opportunity Commission ("EEOC"). (Def. 56.1 ¶ 7.) In their EEOC charges, Plaintiffs claimed that the Port Authority denied them promotion to sergeant based on their national origin. (Alterman Decl., Exs. C and E.) Plaintiffs also claimed that they were subjected to harassment and a hostile work environment due to their national origin and religion. (Alterman Decl., Exs. C and E.) Hindi received a notice of right to sue letter on August 15, 2014, and Aljader received the same on November 4, 2014. (Alterman Decl., Exs. D and F.) Plaintiffs filed their Complaint in this action on November 12, 2014, and on July 29, 2016, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry Nos. 1, 26, 27, 28, 29, and 31.) Plaintiffs opposed Defendant's motion. (Docket Entry Nos. 37-40.)

DISCUSSION

Rule 56 Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Thus, a party that is unable to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will not survive a Rule 56 motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Specifically, the party who bears the burden of proof at trial "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. N.Y.C., 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted). The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'" Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. U.S., 996 F.2d 1455, 1461 (2d Cir. 1993)).

For the purposes of summary judgment motion practice, a fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v.

Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

State and City Law Claims

In their opposition briefing, Plaintiffs abandon their NYSHRL and NYCHRL claims, indicating their agreement with the Port Authority's position that "the Port Authority, as a bi-state agency, is not subject to the NYCHRL or the NYSHRL." (Docket Entry No. 39 at 1 n.1.) Indeed, "New York anti-discrimination laws do not apply to the Port Authority because it is a bi-state agency created by compact." Mack v. Port Auth. of N.Y. & N.J., 225 F. Supp. 2d 376, 391 (S.D.N.Y. 2002). The Court agrees that these statutes do not apply to the Port Authority and grants Defendant's motion for summary judgment as to Plaintiffs' First, Second, and Third Causes of Action.

Failure to Promote to Claims

*Timeliness and Exhaustion*

"[I]n Title VII . . . cases involving Port Authority, a plaintiff must file a claim with the EEOC within 180 days of the occurrence of the discriminatory act." Vernon v. Port Auth. of N.Y. & N.J., 154 F. Supp. 2d 844, 850 (S.D.N.Y. 2001). A failure to promote "occurs" on the date of the decision not to promote. See Forsyth v. Fed. Emp't and Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005). Plaintiffs filed their EEOC charge on April 2, 2014. Applying the 180-day rule, only incidents occurring within 180 days prior to their filing are actionable. Therefore, any events occurring before October 4, 2013, are time-barred.

Plaintiffs must also allege each claim in an EEOC charge before pursuing the claim in federal court.  See Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998).  "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action."  Id. (internal quotation marks omitted).  A court can nonetheless consider a claim that was not alleged in the Plaintiffs' EEOC charge if that claim is "reasonably related" to the claims that were asserted in the charge.  Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001).  However, a court may dismiss Plaintiffs' claims if they cannot demonstrate that the omitted claims are "reasonably related" to the included claims.  See Martin v. State Univ. of N.Y., 704 F. Supp. 2d 202, 221 (E.D.N.Y. 2010).

*McDonnell Douglas Burden-Shifting*

Plaintiffs' Title VII failure to promote claims are evaluated under the three-step burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).  The first step under McDonnell Douglas requires Plaintiffs to proffer evidence establishing a prima facie case of discrimination.  411 U.S. at 802; see, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  To establish a prima facie case for discriminatory failure to promote, a plaintiff must demonstrate that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications."  Brown, 163 F.3d at 709 (internal quotation marks omitted).

The second step shifts the burden to the employer to offer some legitimate, non-discriminatory reason for its actions.  McDonnell Douglas, 411 U.S. at 802.  "This burden is one of production, not persuasion; it can involve no credibility assessment."  Reeves v. Sanderson

Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal citation and quotation marks omitted). The employer does not need to prove that the challenged action was not the product of discrimination, but must provide a clear and specific explanation for the action. Gibbs v. Consol. Edison Co. of N.Y., 714 F. Supp. 85, 89 (S.D.N.Y. 1989). The presumption of discrimination arising from the prima facie case drops out upon such a proffer of a legitimate, non-discriminatory reason.

The burden then shifts back to the Plaintiffs to offer proof that would enable a reasonable fact finder to conclude that Defendant's proffered reason was a pretext for prohibited discrimination. Reeves, 530 U.S. at 143; accord Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000). "As a legal matter, it is well settled that a nondiscriminatory reason for an employment action does not become illegitimate simply because it is mistaken." Bohorquez v. N.Y.C., 2013 WL 11327030, at *5 (S.D.N.Y. Jan. 14, 2013) (citing cases). Plaintiffs may rely at the rebuttal stage on the same facts used to establish the prima facie case so long as a preponderance of the evidence would allow a reasonable fact finder to find that a discriminatory violation has occurred. Holtz, 258 F.3d at 78. However, Plaintiffs' own conclusory allegations will not be sufficient to overcome proffered evidence substantiating Defendant's non-discriminatory rationale for the actions. See Jasmin v. Dep't of Labor, 2007 WL 1746909, at *8 (S.D.N.Y. June 15, 2007).

*Sergeant Promotion*

Plaintiffs assert that they were denied promotion to sergeant based on their national origin. They argue that discriminatory intent can be inferred from (i) the absence of Middle Eastern sergeants employed by the Port Authority, and from (ii) the fact that several "less qualified" non-Middle Eastern officers were promoted to sergeant. (Docket Entry No. 39 at 17-

19.) Defendant argues that it had a legitimate, non-discriminatory reason for not promoting Plaintiffs: Plaintiffs were ineligible for promotion because they had exceeded the maximum number of absences permitted under Port Authority policy. (Docket Entry No. 31 at 11.)

Plaintiffs assert claims related to three separate sergeant promotional opportunities (June 2011, February 2012, and November 2012). However, all but Plaintiffs' claims arising from the November 2012 promotional process are time-barred, as the promotional decisions in connection with the June 2011 and February 2012 processes were made more than 180 days before Plaintiffs filed their EEOC charge.[5]

Even if all of Plaintiffs' claims were timely, they would fail on the merits. Plaintiffs have not established a prima facie case of discrimination because they failed to adduce any non-conclusory evidence that they were qualified for promotion to sergeant. The eligibility requirements were set forth in the Port Authority's promotion announcements and internal policies. (See Alterman Decl., Exs. L and Q; see also Ford Aff. ¶¶ 8, 11.) Plaintiffs have not produced evidence from which a reasonable juror could conclude that they were qualified for promotion based on these objective criteria. Plaintiffs offer only "unsubstantiated speculation" to support their claims of eligibility. (See, e.g., Alterman Decl., Ex. G at 59-60, 152-54; Ex. H at 84-88.) For example, Hindi testified that he was qualified for promotion to sergeant based on "[his] time, [his] rank, [his] competency level, [his] recognition." (Alterman Decl., Ex. G at 152-53.) Aljader testified that he was qualified for promotion based on a list of accolades, including his "effort," that he "did well on the test," that he is "a person that people come to for help," and

---

[5] The Court draws this conclusion based, in part, on a reasonable inference that Plaintiffs learned for the first time that they were denied promotion in connection with the November 2012 process when they received Michael Ford's November 8, 2013, letter. (See Alterman Decl., Exs. R and S.)

that "[o]ther officers ask [him] for what they should do." (Alterman Decl., Ex. H at 87-88.) These kinds of subjective assertions, without more, cannot withstand summary judgment in the face of the uncontroverted evidence of Plaintiffs' failure to meet the attendance record criteria established for the position.

Plaintiffs have not provided records—although attendance records appear to be available (see Ricotta Decl., Exs. I and J; see also Alterman Decl., Exs. N and O)—showing that their attendance satisfied the Port Authority's requirements for promotion. Because Plaintiffs have failed to proffer evidence from which a reasonable jury could conclude that they were qualified for promotion to sergeant, their failure to promote to sergeant claims must be dismissed.

Plaintiffs' claims also fail under step two of the McDonnell Douglas framework because the Port Authority has provided a legitimate, non-discriminatory reason for not promoting Plaintiffs to sergeant. Defendant asserts that Plaintiffs failed to meet the attendance requirements and Defendant supports its assertion with attendance records demonstrating their ineligibility. (See Alterman Decl., Exs. G at 83 (Hindi testimony acknowledging that he had "seven total" recorded absence occasions from 2007 to 2012), Ex. H at 78-79 (Aljader testimony acknowledging seven recorded absence occasions from 2007 to 2011), N, O, R, and S.) Plaintiffs have not proffered evidence to show a genuine dispute as to these records.

Lastly, Plaintiffs fail to sustain their burden under the third step in the McDonnell Douglas analysis. Plaintiffs fail to offer evidence from which a reasonable fact finder could conclude that Defendant's proffered reason was a pretext for prohibited discrimination. Even assuming, as Plaintiffs argue, that Defendant's reason for failing to promote them was based on mistaken information (because some of their absences should have been excused), a

"nondiscriminatory reason for an employment action does not become illegitimate simply because it is mistaken."  Bohorquez, 2013 WL 11327030, at *5.

Plaintiffs proffer only unsubstantiated, speculative assertions to support their claim that Defendant's decision was motivated by discriminatory animus.  For example, Hindi testified that he believed that he was discriminated against in connection with the sergeant promotion process based on "the fact of being excluded from numerous assignments, numerous promotions," and based on the fact that "the time we live in people's outlook on the Middle East is not a positive one."  (Alterman Decl., Ex. G at 137-38.)  Aljader testified that "[t]here is no other reason for me not to think they are not discriminating against me if I met the qualifications, and I know I can do a better job than half these people, and I am still not promoted," and that the Port Authority discriminated against him based on "all the stuff that's happening in the news with terrorist attacks and with ISIS and Al-Qaeda and all that stuff."  (Alterman Decl., Ex. H at 115-16.)

Plaintiffs also argue that discrimination can be inferred because the Port Authority has never promoted anyone of Middle Eastern descent.  However, Plaintiffs fail to support this assertion with anything more than speculation and conclusory testimony.  (See Alterman Decl., Ex. G at 158, Ex. H at 106-07.)  Plaintiffs do not provide any objective, empirical evidence regarding the demographics of the Port Authority police department.  Nor do Plaintiffs dispute that Officer Morsi, the only other Middle Eastern officer mentioned in the parties' submissions, has in fact been promoted to sergeant.  (Def. 56.1 ¶ 45.)  Further, Plaintiffs' evidentiary proffers are notable for what they lack: there is no evidence that the Port Authority employees who made the promotional decisions knew of Plaintiffs' national origin, and there is no evidence that the

Port Authority employees who allegedly harassed Plaintiffs had any contact with, or influenced in any way, the Port Authority employees who ultimately made the promotion decisions.

Because Plaintiffs have failed to sustain their burden under each step of the McDonnell Douglas burden-shifting analysis, Defendant's motion for summary judgment is granted with respect to Plaintiffs' failure to promote to sergeant claims.

*Detective Promotion*

Hindi also asserts that he was denied promotion to detective based on his national origin and religion. This claim fails for several reasons. First, Hindi failed to include this specific claim in his EEOC charge, and Hindi makes no argument demonstrating that this claim is "reasonably related" to his claims pertaining to the sergeant promotion (which were included in the EEOC charge). The Court may grant summary judgment on this basis alone. See Martin, 704 F. Supp. 2d at 221.

Hindi's detective promotion claim also fails because he has not demonstrated a prima facie case of discrimination, as required under the first step of the McDonnell Douglas burden-shifting analysis. In order to establish a prima facie case, Hindi must show that he was rejected for the detective position. Brown, 163 F.3d at 709. However, nothing in Hindi's submissions demonstrates that he was, in fact, rejected for the detective promotion. To the contrary, Hindi does not dispute that he was "Recommended" for the position, and remains on the "active list" of officers eligible for promotion. (Def. 56.1 ¶¶ 73-75.) Therefore, the Port Authority is entitled as a matter of law to summary judgment dismissing this claim.

Hostile Work Environment Claims

Plaintiffs also assert that they were subjected to a hostile work environment. In order to establish a hostile work environment claim, a plaintiff must produce evidence that "the

workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted); see also Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 723-24 (2d Cir. 2010). The plaintiff must subjectively experience the working environment as abusive and the Court must be satisfied objectively that it is abusive. See Feingold v. N.Y., 366 F.3d 138, 150 (2d Cir. 2004); Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003).

Generally, isolated instances of harassment are insufficient to form the basis for a finding of a hostile work environment. Rather, the employee must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents was sufficiently continuous and concerted, to have altered the conditions of his working environment. Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000). In determining whether the proffered evidence is sufficient to establish the requisite alteration of the employee's working environment, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. Additionally, courts consider the totality of the circumstances in evaluating the work environment. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 767 (2d Cir. 1998). Indeed, the Supreme Court has described the standard for asserting hostile work environment claims as a demanding one, explaining that courts are to avoid construing federal law as a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998); see also De La Rosa v. N.Y.C. Police Dept., 2010 WL 4177626, at *7 (S.D.N.Y. Oct. 22, 2010) ("The standard for a

hostile work environment claim is 'demanding.'") In Faragher, the Supreme Court made clear that "conduct must be extreme to amount to a change in the terms and conditions of employment." 524 U.S. at 788.

Furthermore, where plaintiffs bring hostile work environment claims against their employer, they must also demonstrate a basis for imputing liability to the employer. Employer liability "attaches only when the employer has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Murray v. N.Y. Univ. Coll. of Dentistry, 57 F.3d 243, 249 (2d Cir. 1995) (internal quotation marks omitted). In order to survive a motion for summary judgment, plaintiffs must present some evidence that a person whose knowledge could be imputed to the defendant knew or should have known about the incidents giving rise to the allegedly hostile work environment. See Bancroft v. Farino, 2014 WL 1255280, at *5 (S.D.N.Y. Mar. 26, 2014) (granting summary judgment in favor of employer defendant where plaintiff presented no evidence that any employees had either actual or constructive knowledge of the incident other than plaintiff herself and the unknown person who placed the allegedly hostile item in a common space).

Having considered the totality of the circumstances, taking as true the evidentiary facts proffered by Plaintiffs and drawing all reasonable inferences in their favor, the Court concludes that Plaintiffs have not tendered evidence sufficient to support a rational fact finder's conclusion that they suffered a hostile work environment at the Port Authority.

First, the Court is not satisfied that the alleged harassment was objectively abusive such that it created an actionably hostile work environment. These incidents were not frequent. Although Plaintiffs fail to provide specific dates for many of the incidents, Plaintiffs' proffers indicate that they encountered allegedly hostile incidents, on average, just once every

two years.  Plaintiffs provide no evidence to indicate that these incidents were part of a concerted pattern of harassment; rather, the record suggests that these incidents were isolated and sporadic.  Because none of the perpetrators has been identified, a reasonable fact finder could not conclude that each incident was carried out by the same actor or group of actors.

Plaintiffs have also failed to demonstrate that the incidents that supposedly created a hostile work environment were sufficiently severe to support liability under federal law.  Title VII is not a "general civility code" and it does not protect against the kind of offhand remarks and offensive behavior that Plaintiffs endured.  These incidents and comments were not physically threatening.  Plaintiffs also provide no evidence that the incidents resulted in any functional change to the terms and conditions of their employment, or that the alleged harassment otherwise interfered with their work performance.  Plaintiffs never sought a transfer of assignment; quite the opposite—they sought to extend the time they spent in these allegedly hostile work environments by electing to work significant overtime hours.

Second, even assuming that the alleged harassment was objectively abusive enough to constitute a hostile work environment, Plaintiffs fail to provide any basis for imputing liability to the Port Authority.  The Port Authority provided a reasonable avenue for Plaintiffs to complain about the hostility against them.  Plaintiffs were free to lodge an anonymous complaint with the Port Authority's Office of Equal Opportunity by following the procedures set forth in the "Equal Employment Opportunity Guide."  (Alterman Decl., Ex. P.)  Plaintiffs neglected to use this reasonable avenue.  (Def. 56.1 ¶¶ 25, 39.)

Furthermore, Plaintiffs fail to adduce any evidence that the Port Authority knew or should have known about the harassment.  Plaintiffs speculate that the Port Authority must have known about the harassment because some of the incidents occurred in a common break

room, but they provide no evidence to substantiate this assertion.  A reasonable fact finder would have no basis to infer that anyone besides the Plaintiffs and the co-workers who posted the offensive images knew of their existence.  Therefore, liability for the allegedly hostile work environment Plaintiffs endured cannot be imputed to the Port Authority.

The Court concludes that no reasonable juror could find Defendant liable for Plaintiffs' hostile work environment claim and, therefore, grants Defendant's motion for summary judgment with respect to Plaintiffs' hostile work environment claim.

Section 1983 Claims

Because Section 1983 employment discrimination claims are analyzed within the Title VII framework, the Court applies the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012).  For the reasons discussed above, Plaintiffs' Section 1983 claims fail on the merits.  Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiffs' Fifth Cause of Action.

CONCLUSION

The Court grants Defendant's motion for summary judgment in its entirety, and Plaintiffs' Complaint is hereby dismissed.  The pretrial conference currently scheduled for June 28, 2019, at 11:30 a.m. is cancelled.  The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and to close this case.

This Memorandum Opinion and Order resolves Docket Entry No. 26.

SO ORDERED.

Dated: New York, New York
May 30, 2019

                                              /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              United States District Judge